THE STATE OF OHIO, APPELLEE, *v.* SAMPSON, APPELLANT.

(No. 81-B-13—Decided January 20, 1982.)

*Mr. William L. Thomas,* prosecuting

attorney, and *Mr. Paul B. Jefferis,* for appellee.

*Mr. J. Tullis Rogers,* public defender, and *Ms. Elizabeth Manton,* for appellant.

DONOFRIO, J. Appeal from the Court of Common Pleas, Belmont County, Ohio, from a judgment of conviction by jury and sentence thereon of grand theft.

The conviction was primarily based on the testimony of Gerald Ciofani, that his 1978 GMC Jimmy vehicle had been stolen. Certain pretrial statements of the defendant-appellant, Joseph Sampson, were admitted into evidence; these statements allegedly showed appellant's agreement with Ciofani to report the vehicle stolen for insurance gain, then disassemble the vehicle. Several investigating officers testified as to appellant's arrest, interrogation, statements made by the appellant, and the trip made to the dump site where some burned vehicle parts had been abandoned.

Appellant's first assignment of error, which states:

"The statement of the accused should not have been admitted into evidence," contains three branches. Branch A states:

"The police lacked probable cause to arrest the accused. All evidence obtained as a result of the arrest should have been suppressed as 'fruit of the poisonous tree.'"

Probable cause exists if facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed.

"* * * common rumor or report, suspicion, or even 'strong reason to suspect' * * * [is] not adequate * * *." *Henry* v. *United States* (1959), 361 U.S. 98 at 101.

R.C. 2935.04 provides that a person may arrest another when he has reasonable cause to believe that a felony has been committed and that the person detained committed it.

Appellant's contention is that the fact situation herein does not arise to probable cause but that the facts merely created

suspicion and that the officer did not possess sufficient information to believe the appellant had committed a felony.

We disagree that the facts do not constitute probable cause.

In assessing whether there is probable cause, evidence within the knowledge of the agent may be considered, even though the evidence is not legally competent evidence in a criminal trial, such as hearsay. *Draper* v. *United States* (1959), 358 U.S. 307, 311. In the instant case, the arresting officer acted on information which he had received from Lieutenant Boan of the Powhatan Police Department and Officer Martin Valoric of the Shadyside Police Department. Specifically, Officer Gross learned from these two officers that the vehicle in which appellant had been stopped on April 30, 1980, had no vehicle identification number in the proper location for a vehicle of that model year. Officer Gross then obtained a license check on the license number which was being used by appellant and found that the license number belonged to another vehicle. In addition, the officer observed appellant speeding in the car that bore license plates registered to another car.

For the foregoing reasons we overrule appellant's Branch A of the first assignment of error.

Branch B states:

"The accused was held by the police for over twenty-four hours without appearance before a magistrate. Any evidence obtained by the police was tainted by the unnecessary delay in insuring the accused the court's intervention in his detention."

From the record we do not find that appellant was detained an unreasonable amount of time before an appearance before a magistrate.

Officer Gross testified at the pretrial hearing of August 25, 1980, that the appellant was arrested on April 30, 1980, at 8:00 p.m. A warrant was obtained on May 2, 1980. Officer Gross testified that he informed the appellant of his rights several times, both at the time of his arrest and later, before questioning at the Shadyside Police Department. Quoting Officer Gross: "I informed him several times and he denied wanting an Attorney. He said he didn't need to talk to him. He said he knew his rights."

The case of *Cato* v. *Alvis* (C.A. 6, 1961), 288 F. 2d 530 [16 O.O.2d 437], may provide some guidance. In *Cato,* the accused was arrested on February 6 without a warrant and held until February 11. Statements were recorded on the 7th, 8th and 11th of February. The accused in *Cato* testified that he was not advised of his right to secure a lawyer, or to remain silent, or to be taken before a court or a magistrate. The district judge held that the evidence was insufficient to establish that the defendant's confessions were involuntary and denied the writ of habeas corpus. The court said that the failure of the police to comply with R.C. 2935.05, which provides that when a police officer has arrested a person without a warrant he must without unnecessary delay take such person before a court or magistrate, does not invalidate a subsequent conviction on proper and sufficient evidence.

For the foregoing reasons we overrule appellant's Branch B of the first assignment of error.

Branch C states:

"The accused's statement was not voluntarily made, but was rather a product of police coercion."

Under this assignment of error, the appellant contends that the statements he made to the police officers were the product of coercive police interrogation and not of a free and voluntary decision to discuss the case.

It appears from appellant's brief that his main contention is that the police urged his cooperation and frightened him with threats of lengthy incarceration marked by sexual abuse.

"The ultimate test * * * [is] voluntariness. Is the confession the product of an essentially free and unconstrained

choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. * * * The line of distinction is that at which governing *self-direction* is lost and *compulsion,* of whatever nature or however infused, propels or helps to propel the confession." *Culombe* v. *Connecticut* (1961), 367 U.S. 568 at 602. (Emphasis added.)

However, the record indicates that the pivotal issue here is that of credibility of the witness's statement. The officers' testimony varied considerably to that of the appellant. The officers maintained that no promises had been made by the police officers to appellant, no threats had been made to appellant, and appellant had been advised of his constitutional rights on several different occasions. At one point, the appellant was willing to take the police officers to the area where he had disposed of the vehicle parts which he had not been able to dispose of otherwise. At any time during the almost two days of detention without a warrant, appellant could have called an attorney and caused the questioning to cease. Appellant was well aware of this fact.

It is not the function of a reviewing court to determine credibility of the witnesses. At the hearing for suppression of evidence, August 25, 1980, it was the trial judge's function to assess credibility and from the record before us we find that the trial court did not err in ruling that the statements were voluntary and admissible.

We, therefore, overrule appellant's Branch C of his first assignment of error.

Appellant's second assignment of error states:

"Oral statements made to police officers by the defendant should never have been admitted as evidence. Despite defense counsel's request for discovery of statements, the existence and contents of these statements was never revealed to defense counsel prior to the officers' testimony from the witness stand."

Crim. R. 16(B)(1)(a)(ii) provides that the state shall provide *written summaries* of any oral statements, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer. (Emphasis added.) The appellant was provided access to the taped interview that Officer Gross and others had conducted with the appellant. Chief Louis Keitz was not sure if he had even informed the prosecution of the oral statements made by the appellant during the journey to the slate dump. In any event, Crim. R. 16 provides for discovery of written summaries of oral statements.

In the case of *State* v. *Montalvo* (1974), 47 Ohio App. 2d 296 [1 O.O.3d 357], paragraph two of the syllabus, this court held:

"Oral statements given to a police officer by a defendant are not such as are contemplated by Crim. R. 16(B)(1)(a)(ii), 'written summaries of any oral statement, or copies thereof.' "

We, therefore, overrule appellant's second assignment of error.

Appellant's third assignment of error states:

"Testimony concerning alleged criminal activity of the defendant other than that for which he was on trial was permitted to go to the jury, in violation of the accused's right to a fair trial."

Under this assignment of error, appellant argues that he was tried for the theft of one motor vehicle, a 1978 GMC Jimmy. He chose not to take the stand to testify. In the course of their testimony, several of the state's witnesses made reference to other criminal activity that the appellant had allegedly participated in, conduct other than the offense for which he was on trial. Chief Keitz testified that the appellant took him and other officers to a dump site, "[t]o show us vehicles that he had told — told us that he had stolen." Officer Richard Gross while

discussing the accused's statements responded to defense counsel's question:

"Yes, sir, there was mention of rain. There was mention of Friday 'cause he said he always liked to take them on a Friday 'cause he didn't want to —."

Witnesses for the state used the plural rather than the singular when testifying as to the appellant's statements to them. See, for example, the following language by Chief Keitz:

"To show us vehicles that he had told — told us that he had stolen."

"Yes, Joey had agreed at the police station to take the Prosecutor and myself out and show us the different parts of the vehicles."

"There was (sic) two vehicles specifically to show this —"

After these last two instances, the trial court instructed the witness, the prosecutor and the members of the jury that the only motor vehicle involved in the case was a 1978 GMC Jimmy. The court's curative instruction to the jury was as follows:

"* * * Members of the Jury, you are instructed to ignore and not take into consideration the statement made by this witness in response to Counsel's question involving any other motor vehicles except the one that's involved in the instant action. You must not under any circumstances consider any other motor vehicle. Now proceed, Mr. Jefferis."

We find that there is no error as alleged under this assignment of error.

The trial court did not permit the witness to further testify in the plural and gave sufficient curative instructions to the jury. The general rule is that evidence of prior crimes cannot be shown in the trial of a defendant; only evidence bearing on a particular charge on which defendant is brought to trial may be introduced at trial, unless evidence of other criminal acts falls within those acts enumerated in R.C. 2945.59, which provides as follows:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

However, we find that if the state had chosen to develop further evidence of other vehicles that were stolen, it appears that this testimony would have fallen under the exception to the prior crimes rule.

Here, the evidence complained of could have been developed to show the appellant's guilty knowledge as well as appellant's scheme, plan, or system in doing the crime he had been charged with.

The appellant's motive or scheme in this case was the theft of a motor vehicle for profit, either for his benefit or for the actual owner's, or both.

We, therefore, overrule appellant's third assignment of error.

Appellant's fourth assignment of error states:

"The closing argument presented by the State of Ohio was prejudicial to the accused and denied him his due process right to a fair trial. The argument tended to encourage the jury to return a guilty verdict if it disapproved of crime, rather than to reach a verdict based on the evidence."

In his closing argument, the prosecutor stated:

"Being a Juror is a hard job. It's just another duty of citizenship. It's one of the more important duties of citizenship. Hope you realize that. You're not here as individuals, but you're here as members of the United States Government. Specifically, you're the only members who

can punish this individual for his criminal actions.

"Law enforcement is no stronger than the Jury within the community. I would ask you to be strong in your deliberations. You heard — you heard the testimony. You heard all of it. I want you to keep it all in your minds, weigh it all when you go into the Jury room. The Defendant is guilty not because I say he's guilty, but because the evidence demands that verdict. I wish you would do your duty and thank you very much for your attention."

Under this assignment of error appellant argues that the argument strongly appeals to considerations not relevant to the accused's guilt or innocence. We find that some parts of the prosecutor's remarks become a close question as to this characterization. We find it was error for the prosecutor to state to the members of the jury that they were the only members who could punish the individual for his criminal action and any implication that was given that the jury was an extension of the law enforcement community. The jury's responsibility does not include punishment, and the jury should not stray from the consideration of only the evidence before them. However, there was no objection at the time of this argument and we find that the evidence of this is such that whatever error was involved in the prosecution's argument was harmless error and not prejudicial requiring reversal.

Accordingly, we overrrule appellant's fourth assignment of error and affirm the judgment of the trial court.

*Judgment affirmed.*

O'NEILL, P.J., and GORMAN, J., concur.

GORMAN, J., of the Hamilton County Court of Common Pleas, was assigned to the Seventh Appellate District in accordance with Section 5(A)(3), Article IV, Constitution.