The STATE of Ohio, Appellant,

v.

JOHNSON, Appellee.

[Cite as *State v. Johnson,* 187 Ohio App.3d 322, 2010-Ohio-1790.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23616.

Decided April 23, 2010.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Kelly D. Madzey, Assistant Prosecuting Attorney, for appellant.

Jack Harrison, for appellee.

GRADY, Judge.

{¶ 1} This appeal is brought by the state pursuant to R.C. 2945.67 and Crim.R. 12(K) from a judgment that granted defendant's Crim.R. 12(C)(3) motion to suppress evidence.

{¶ 2} On March 6, 2009, at a Dayton Police Department roll call of officers, Dayton Police Sergeant Richard Blommel advised those present of a Crime Stoppers tip that an apartment in a building on Edison Street in Dayton was being used as a boot joint, and also that heroin was being sold there. He further stated that the tipster indicated that the apartment is number two, and that the name "Gooding" appears on the building.

{¶ 3} Sergeant Blommel testified at the hearing on defendant's motion to suppress evidence that boot joints are unlicensed, illegal establishments where liquor is sold. Often, gambling, drug sales, and prostitution also occur there. Weapons are typically present in boot joints. Sergeant Blommel also advised the officers that he received information corroborating the Crime Stopper tip from a drug unit officer.

{¶ 4} Officer John Beall was present during Sergeant Blommel's roll call on March 6, 2009. After leaving, Officer Beall drove along Edison Street. Officer Beall observed that the apartment building at 149 Edison Street bears the name "Gooding" on the front. Defendant, Frank Johnson, was standing outside apartment number two. When he saw Officer Beall, defendant turned and walked quickly into the apartment. That aroused Officer Beall's suspicions, and he parked his cruiser and approached apartment two on foot. Officer Beall testified at the suppression hearing that persons who run boot joints are usually armed.

{¶ 5} The screen door to apartment two was closed, but the interior entry door was open, and Officer Beall saw five people, including defendant, inside the apartment. Seven or eight individual chairs were lining the walls, but no sofa or coffee table, which Officer Beall testified is typical of a boot joint. Officer Beall opened the screen door and, while standing in the doorway, asked defendant whether this was a boot joint. Defendant responded, "Yes." Officer Beall then entered the apartment and walked toward defendant, who reached in his right front pocket and began to throw clear gel caps containing heroin on the floor.

{¶ 6} Officer Beall seized and handcuffed defendant and called for assistance. Officer Beall observed several liquor bottles and beverage price lists. When back-up crews arrived, they performed a protective sweep of the apartment, looking for additional persons. In a back bedroom, inside a closet with no door, Officer Kingery observed a plastic bag that contained 108 gel caps filled with heroin, in plain view.

{¶ 7} Defendant was indicted on four separate counts of possessing heroin, R.C. 2925.11(A), one count of trafficking in heroin, R.C. 2925.03(A)(2), one count of possession of criminal tools, R.C. 2923.24(A), and two counts of possession of drug paraphernalia, R.C. 2925.14(C)(1). Defendant filed a motion to suppress the evidence police had seized from his apartment. A hearing was held, at which defendant denied telling Officer Beall that his apartment was a boot joint or that he had thrown heroin gel caps on the floor. Following the hearing, the trial court granted defendant's motion to suppress the evidence, finding that Officer Beall could not lawfully enter the apartment without a warrant.

{¶ 8} The state timely appealed to this court from the trial court's decision granting defendant's motion to suppress the evidence. Defendant-appellee has not filed a brief.

## ASSIGNMENT OF ERROR

{¶ 9} "The trial court erred in granting Johnson's motion to suppress."

{¶ 10} In a motion to suppress, the trial court assumes the role of the trier of fact and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. *State v. Clay* (1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. *State v. Satterwhite* (1997), 123 Ohio App.3d 322, 704 N.E.2d 259.

{¶ 11} Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, absent a few, well recognized exceptions. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. "Exigent circumstances" is one of those well-recognized exceptions. *State v. Jones*, 183 Ohio App.3d 839, 2009-Ohio-4606, 919 N.E.2d 252. The scope of this exception is strictly limited by the particular exigencies that justify the search or seizure, and the police bear a heavy burden when attempting to demonstrate an urgent need that justified a warrantless search or arrest. Id.

{¶ 12} The state argues that Officer Beall's warrantless entry into defendant's apartment was lawful because it was based upon the exigent circumstance of the need to prevent the imminent destruction of drug and alcohol evidence that Officer Beall had probable cause to believe was inside. In *Brigham City v. Stuart* (2006), 547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650, the United States Supreme Court observed:

{¶ 13} "It is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.' *Groh v. Ramirez*, 540 U.S. 551, 559, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (quoting *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); some internal quotation marks omitted). Nevertheless, because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions. *Flippo v. West Virginia*, 528 U.S. 11, 13, 120 S.Ct. 7, 145 L.Ed.2d 16 (1999) *(per curiam); Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). We have held, for example, that law enforcement officers may make a warrantless entry onto private property to fight a fire and investigate its cause, *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), to prevent the imminent destruction of evidence, *Ker v. California*, 374 U.S. 23, 40, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (plurality opinion), or to engage in 'hot pursuit' of a fleeing suspect, *United States v. Santana*, 427 U.S. 38, 42, 43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). '[W]arrants are generally required to search a person's home or his person unless "the exigencies of the situation" make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.' *Mincey v. Arizona*, 437 U.S. 385, 393–394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)."

{¶ 14} Generally, the exigent-circumstances exception to the Fourth Amendment's warrant requirement can apply when the delay associated with obtaining a warrant would result in endangering police officers or other individuals, or would result in concealment or destruction of evidence. *State v. Willis* (July 27, 1994), Montgomery App.No. 14276, 1994 WL 390178; *State v. Motley*, Summit App. No. 24182, 2008-Ohio-6937, 2008 WL 5412419. An urgent need to prevent evidence from being lost or destroyed may constitute an exigent circumstance, particularly where drugs are involved. *Motley.* However, police cannot by their own conduct create an exigency by announcing their presence and then enter a private premises without a warrant under the rubric of exigent circumstances in order to prevent destruction of evidence inside. *State v. Sims* (1998), 127 Ohio App.3d 603, 713 N.E.2d 513; *State v. Jenkins* (1995), 104 Ohio App.3d 265, 661 N.E.2d 806; Katz, Ohio Arrest, Search & Seizure (2008), Section 9:5.

{¶ 15} The record demonstrates that Officer Beall, attired in his patrol uniform, approached the front door of defendant's apartment. The screen door was closed, but the interior entry door was open, and the open door allowed Officer Beall to see inside and observe five men, including defendant. Officer Beall pulled open the screen door and, while standing in the doorway, asked defendant if this was a boot joint. According to Officer Beall, defendant

responded, "Yes," at which point Beall entered the apartment and proceeded toward defendant.

{¶ 16} The doorway of the apartment into which Officer Beall stepped after he opened the screen door is an area within the curtilage of that premises, to which the protections of the Fourth Amendment extend. *State v. Peterson*, 173 Ohio App.3d 575, 2007-Ohio-5667, 879 N.E.2d 806. We have held that an officer's conduct in opening the door of an apartment and stepping into and standing in the doorway, in and of itself and absent a warrant, constitutes an unlawful entry in violation of the Fourth Amendment. *State v. Dennis*, 182 Ohio App.3d 674, 2009-Ohio-2173, 914 N.E.2d 1071.

{¶ 17} Officer Beall's conduct in opening the screen door of the apartment and stepping into the open doorway to present himself to those inside constituted an unlawful warrantless entry onto those premises. The admission he then procured from defendant that the premises was a boot joint is subject to suppression as fruit of the poisonous tree. *Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319. That scenario likewise operated to create the purported need to enter the apartment to secure evidence inside. It is on that need that the state relies to argue that the entry was authorized by the exigent-circumstances exception to the Fourth Amendment warrant requirement. However, police by their own conduct cannot create an exigency and then enter a premises to prevent destruction of evidence. *Sims; Jenkins.* Lacking a valid exigency, Officer Beall was not in a lawful position, once inside the apartment, to see the contraband that was in plain view. *Peterson.* The trial court did not err when it granted defendant's motion to suppress the evidence that police then seized.

{¶ 18} The state's assignment of error is not well taken and is overruled. The judgment of the trial court will be affirmed.

Judgment affirmed.

DONOVAN, P.J., and FAIN, J., concur.